UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JEANETTE M. MARMET, | CASE NO. 5:12CV806 |
| Plaintiff, | UNITED STATES MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| CAROLYN W. COLVIN[1], ACTING COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION & ORDER** |
| Defendant. | |

Jeanette M. Marmet ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

I. **PROCEDURAL AND FACTUAL HISTORY**

On October 2, 2009, Plaintiff applied for DIB and on October 13, 2009 she applied for SSI, alleging disability beginning on July 1, 2009, due to depression, suicidal tendencies, post-traumatic stress disorder ("PTSD") and memory problems. ECF Dkt. #13 at 170-177, 211.[2] The SSA denied Plaintiff's application initially and upon reconsideration. *Id.* at 110-116, 120-139. Plaintiff requested an administrative hearing, and on September 14, 2011, an ALJ conducted an administrative hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE"). *Id.* at 65, 137. In a decision dated October 26, 2011, the ALJ found that

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found in the search box at the top of the page on the ECF toolbar.

Plaintiff was not disabled and therefore not entitled to DIB or SSI. *Id*. at 14-31. Plaintiff filed a request for review of the ALJ's decision, but the Appeals Council denied the request on February 1, 2012. Tr. at 1-9.     On April 3, 2012, Plaintiff filed the instant suit appealing the ALJ's decision. ECF Dkt. #1. On September 12, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #16. On October 25, 2012, Defendant filed a brief on the merits. ECF Dkt. #17. Plaintiff filed a reply brief on November 5, 2012. ECF Dkt. #18.

**II**.     **RELEVANT MEDICAL HISTORY**

On June 7, 2008, Plaintiff had a brain MRI for complaints of headache, blurred vision, vertigo and history of migraines. ECF Dkt. #13 at 304. The results of the MRI were normal. *Id.*

On August 31, 2008, Plaintiff was taken by ambulance to the emergency room after she was assaulted and stabbed multiple times while in her home. *Id.* at 323. She was diagnosed with a stab wound in her abdomen, a facial contusion and an arm laceration. ECF Dkt. #13 at 332. A facial CT scan showed nasal bone fractures with tissue swelling, and a right periorbital hematoma and facial hematomas. *Id.* at 344. A brain CT showed no acute intracranial abnormality but a right-sided periorbital hematoma of moderate size and nasal bone fractures. *Id.* at 348. A CT of the abdomen and pelvis showed a stab wound to the lower abdomen and pelvis on the right. *Id*. at 345.

Plaintiff underwent a laparoscopy of her abdomen to determine whether her peritoneal cavity was penetrated and no penetration was found. ECF Dkt. #13 at 331. Plaintiff's arm laceration was also cleansed, irrigated and stapled during the procedure. *Id.* at 332. On March 25, 2009, Plaintiff underwent a closed septorhinoplasty with cartilage graft and coblation of inferior turbinates bilaterally to correct the residual impact of her nasal fractures and the airway obstruction that she suffered as a result. *Id.* at 356.

Plaintiff thereafter underwent mental health treatment. A discharge summary from Portage Path Behavioral Health dated November 30, 2009 indicated that Plaintiff began mental health treatment on June 30, 2008 and had twenty counseling sessions. ECF Dkt. #13 at 449. She treated with Eleanor Rusinek, M.A., who noted that Plaintiff's condition upon her last visit on August 18, 2009 was moderately depressed with a restricted affect, with no noted psychoses. *Id*. However, Plaintiff failed to follow up with treatment for more than four months and was discharged. *Id*. Ms.

Rusinek further indicated that Plaintiff had six prior admissions to Portage Path and she had a pattern of deciding to be stable and engage superficially in treatment. *Id.* Ms. Rusinek stated that Plaintiff "then, invariably, becomes involved w/..." and this statement is continued on the other side of the discharge paper but was not copied into the record. *Id*. Nevertheless, but helpful, Ms. Rusinek recommends that if Plaintiff would return to treatment, she "needs inpatient substance abuse treatment before readmission." *Id.*

On October 14, 2009, a report from Interval Brotherhood Home indicated that Plaintiff was admitted there upon referral from Akron Probation for Plaintiff's inability to control her addictions and the accumulating consequences of those addictions. ECF Dkt. #13 at 515, 520. Plaintiff reported that she graduated from high school and completed some college. *Id*. Plaintiff's admitting diagnoses were cocaine dependence with physiological dependence, alcohol dependence with physiological dependence, and marijuana dependence with physiological dependence in sustained full remission. *Id*. It was noted that Plaintiff integrated quickly and successfully into individual and group counseling, with strong motivation and self-awareness, and she earned respect from residents and staff. *Id*. at 520. Plaintiff received a staff-approved discharge on March 30, 2010 after she completed 169 days of treatment. *Id*. Plaintiff's discharge diagnoses were recurrent, moderate major depressive disorder, chronic PTSD, cocaine and alcohol dependence with physiological dependence in a controlled environment, and marijuana dependence with physiological dependence in sustained full remission. *Id*.

On January 4, 2010, Plaintiff returned to Portage Path and underwent a psychiatric evaluation by Dr. Schmitt. ECF Dkt. #13 at 450-454. Plaintiff reported problems with depression since childhood with crying spells and irritability. *Id*. at 450. She reported anxiety, decreased energy, motivation, anhedonia, concentration, and helplessness, with suicidal ideation, a history of suicide attempts and a history of cutting and burning herself. *Id*. Plaintiff also reported being in foster homes during her childhood, and prior physical, emotional and sexual abuse. *Id*. at 452. She indicated that she graduated from high school and completed two years of college. *Id.*

Dr. Schmitt noted that Plaintiff was well-groomed, with average speech, eye contact and demeanor, and logical thought, full affect, and average intelligence. ECF Dkt. #13 at 453. Dr.

Schmitt noted that Plaintiff reported a significant improvement on her current medication. *Id*. He diagnosed her with recurrent, moderate, major depressive disorder and polysubstance dependence in early remission. *Id*. He continued her medication, ordered counseling with Ms. Rusinek, and continued her behavioral therapy. *Id*. at 454. Plaintiff thereafter attended therapy with nurse practitioner Donna Laughlin and Ms. Rusinek. *Id*. at 455- 469. Ms. Rusinek reported after Plaintiff's April 22, 2010 session that Plaintiff was making plans to return to college in the fall to complete a degree in computer programming and then to continue for a bachelor of arts degree in graphic design. *Id*. at 461.

On January 6, 2010, Plaintiff presented for a mental health examination and assessment by Dr. Dubey, an agency examining psychologist. ECF Dkt. #13 at 404. Plaintiff reported a family history of depression and substance abuse and indicated that she had been divorced for a year and has four children. *Id*. at 404-405. Plaintiff stated that she lost custody of all four of her children and was living with her father. *Id*. at 405. She indicated that she had been on medication and was participating in therapy since 1999 for depression and PTSD. *Id*. She reported that she previously abused alcohol, marijuana, cocaine and methamphetamines until October 2009 when she quit with the help of a treatment program. *Id.* Plaintiff stated that she took her medications as prescribed. *Id.* Plaintiff further reported that she graduated from high school, took no special classes, and she had prior involvement in the legal system in 2006 and 2009. ECF Dkt. #13 at 405. She indicated that she last worked in June of 2009 at a labor job for one year and quit the job because of health reasons. *Id*. She stated that she had trouble keeping a job because of her psychological symptoms but she was able to understand the expectations of an employer. *Id*. She also reported that she was avoidant, and had nightmares and daily functioning difficulties due to reliving the 2008 attack. *Id*. at 407. Plaintiff also reported trouble concentrating and remembering. *Id.*

Plaintiff also stated that her daily activities included cleaning and attending alcoholics anonymous meetings and therapy. ECF Dkt. #13 at 408. She reported that she can perform daily chores and take care of her personal hygiene independently, and she can drive, shop and spend time with her family and friends. *Id*. She further indicated that she had experienced a variety of changes

in the past year and abruptly since her assault, rendering her unable to work outside the home and unable to continue in college. *Id*.

Dr. Dubey found that Plaintiff was oriented, alert and responsive, and she had adequate recall of remote past experiences and the recent past. ECF Dkt. #13 at 407. He found that her ability to do simple calculations was in the below average range, but she was able to interpret a proverb abstractly. *Id*. He found her level of cognitive functioning to be in the average range. *Id.* He diagnosed her with polysubstance dependence in early remission and PTSD. *Id*. In terms of work-related mental abilities, Dr. Dubey opined that Plaintiff had no impairment in understanding, remembering and following simple instructions, mild impairment in maintaining attention, concentration, persistence and pace to perform simple repetitive tasks, and moderate impairment in relating to others and in withstanding stress and pressure of daily work activities. *Id*. at 409. He further opined that Plaintiff had mild impairment in understanding and following complex instructions and moderate impairment in performing complex tasks. *Id.*

On January 30, 2010, Dr. DeMuth, an agency reviewing physician, completed a mental RFC assessment form and a psychiatric review technique form. ECF Dkt. #13 at 424-442. Dr. DeMuth based his assessment upon Listing 12.06 for anxiety-related disorders and Listing 12.09 for substance addiction disorders. *Id*. at 424. He found Plaintiff to have mild restriction in her daily living activities, and moderate restrictions in maintaining social functioning and having difficulties in maintaining concentration, persistence or pace. *Id*. at 434. He further noted that Plaintiff had no episodes of decompensation of an extended duration. *Id*.

In his mental RFC, Dr. DeMuth opined that Plaintiff was not significantly limited in any area of understanding and memory and was moderately limited in the areas of working with others without being distracted by them and in completing a normal workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. ECF Dkt. #13 at 438-439. He further concluded that Plaintiff was moderately limited in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and in getting along with coworkers

without distracting them or exhibiting behavioral extremes. *Id.* at 439. Dr. DeMuth also opined that Plaintiff was moderately limited in responding appropriately to changes in the work setting. *Id.*

On July 26, 2010, Plaintiff underwent an EEG which showed mildly abnormal results. ECF Dkt. #13 at 556.

On August 21, 2010, Dr. Sipps conducted a psychological evaluation of Plaintiff for the agency which included testing. ECF Dkt. #13 at 471. He found Plaintiff oriented to time, place, situation and person, and found her concentration and attention to task mildly impaired. ECF Dkt. #13 at 473. The results of the Wechsler Adult Intelligence Scale-IV indicated that Plaintiff had a borderline full scale IQ and she appeared to function within the low-average range of adult intellectual ability. *Id*. at 474. The results of the Wechsler Memory Scale-IV revealed that Plaintiff appeared to be functioning within the borderline to deficient range of adult cognitive ability with relative weakness in the area of memory functioning. *Id*. at 475.

In summary, Dr. Sipps diagnosed Plaintiff with borderline intellectual functioning, polysubstance dependence in reported remission, mood disorder not otherwise specified in partial remission with treatment, and PTSD. ECF Dkt. #13 at 475. He opined that Plaintiff's capacity for remote recall was mildly impaired, her capacity for recent and immediate memory were moderately impaired, and her working memory was markedly impaired. *Id.* He further opined that Plaintiff's capacity for understanding was mildly impaired and she would be able to understand, remember and follow simple directions without difficulty. *Id.* He concluded that Plaintiff would be markedly limited in her ability to understand, remember and follow complex materials. *Id*. As for sustained concentration, persistence and pace, even for simple, repetitive tasks, he found Plaintiff's abilities moderately impaired. *Id*. Dr. Sipps also opined that Plaintiff's capacity for social interaction was moderately impaired, although she was only mildly impaired in interacting with those with whom she was familiar. *Id.* He further concluded that Plaintiff's capacity for work stress tolerance was moderately impaired due to her impairments. *Id*. at 476.

On August 29, 2010, Dr. Zwissler, an agency reviewing psychologist, completed a mental RFC assessment and psychiatric review technique form. ECF Dkt. #13 at 479. He based his assessment on Listings 12.02 for organic mental disorders, Listing 12.04 for affective disorders,

Listing 12.06 for affective disorders, and Listing 12.09 for substance addiction disorders. *Id*. Dr. Zwissler opined that Plaintiff had mild restrictions in daily living activities, and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence or pace. *Id.* at 489. Dr. Zwissler found that Plaintiff experienced no episodes of decompensation. *Id*. In completing the mental RFC form, Dr. Zwissler opined that Plaintiff was moderately limited in the areas of: understanding, remembering, and executing detailed instructions; maintaining attention and concentration for extended periods; working with others without being distracted by them; completing a normal workweek without interruptions from psychologically based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 493-494. He further opined that Plaintiff was moderately limited in interacting appropriately with the general public, and in getting along with coworkers without distracting them or exhibiting behavioral extremes. *Id.* at 494. Dr. Zwissler opined that Plaintiff retained the ability to understand simple, two-step routine tasks and could carry them out to sustained completion without strict time pressure in a static setting with few and superficial interactions. *Id.* at 496.

   Plaintiff continued to treat at Portage Path during her residence at Interval Brotherhood and reported having difficulties at times and doing better at other times. ECF Dkt. #13 at 567-633. In June of 2010, she reported that she was homeless and staying with various friends and tried to take herself off of her medications, but felt very unstable without the medications, so started taking them as prescribed. *Id*. at 622. She indicated that she kept forgetting to take her medication, but she had a friend who reminded her and she used a pill organizer. *Id*. She thereafter rated her anxiety as 5 out of 10 and her depression as 2 out of 10 on a ten-point scale. *Id*. In March of 2011, Plaintiff noted that she only went to two AA meetings per week because she felt that she could not go out of the house. *Id.* at 572. She indicated that she felt physically ill when she left her home and stayed sick when away until she returned home. *Id*. Plaintiff had not yet met her new therapist, but requested a female therapist. *Id*. In May of 2011, Plaintiff was discussing how staying sober was difficult and she was staying away from people and things as her partner for ten years had relapsed on crack. *Id.* at 569. She tried to work but could not do so because she did not like to leave the house and wanted to stay home with her cat who helped to calm her. *Id*. In September of 2011,

-7-

Plaintiff appeared to have both good and bad days, indicating on August 31, 2011 that she did not want to participate in the group therapy activities and on September 1, 2011 that she had a good support system and sponsor. *Id*. at 632-633. On September 6, 2011, Plaintiff was again active and engaged in group therapy and reported that she was better able to set boundaries and was communicating more. *Id*. at 631-633.

### III.   **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff, who was thirty-two years old on the date of her alleged onset date, suffered from: PTSD; affective disorders, variously diagnosed as (a) mood disorder, not otherwise specified ("NOS"), in partial remission, and (b) major depressive disorder, recurrent; personality disorder, NOS, with borderline and dependent traits; cognitive disorder, NOS, and borderline intellectual functioning ("BIF"); and polysubstance dependence in remission, which qualified as severe impairments under 20 C.F.R. §404.1520(c) and 416.920(c). ECF Dkt. #13 at 17. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926 "Listings"). *Id*. at 18.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> - Is limited to simple, routine, and repetitive tasks that can be learned in 30 days or less;
>
> - Is limited to "low stress" work, defined as precluding tasks that involve high production quotas (such as piecework or assembly line work), strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others; and
>
> - Can have limited and superficial interaction with supervisors, co-workers, and the public.

ECF Dkt. #13 at 21. The ALJ concluded that while Plaintiff was unable to perform her past relevant work, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including that of the representative occupations of housekeeping cleaner, inspector, and

-8-

laundry laborer. *Id.* at 28. As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to social security benefits.

## IV. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Thus, the ALJ has a "zone of choice" within which he or she can act without the fear of court interference. *Id.* at 773.

## VI. ANALYSIS

### A. RFC AND CREDIBILITY

Plaintiff asserts that the ALJ failed to evaluate her credibility correctly. ECF Dkt. #16 at 10-12, ECF Dkt. #18 at 1. She asserts that the ALJ failed to provide sufficiently specific reasons for discrediting her testimony that she could not understand, remember and carry out even simple instructions. *Id*. The Court finds that the ALJ provided sufficient reasons for discounting Plaintiff's credibility and substantial evidence supports the ALJ's determination on this issue.

The social security regulations establish a two-step process for evaluating the credibility of a claimant's symptoms about pain or other symptoms and their functional effects. *See* 20 C.F.R. § 404.1529 , SSR 96-7p. In order for subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling symptoms arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling symptoms. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment

exists that could reasonably be expected to produce the individual's symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the symptoms or pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication; any treatment, other than medication, that the claimant receives or has received to relieve the symptoms or pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ must explain the factors that she considered in assessing the claimant's statements about her symptoms. SSR 96-7p.

In this case, the first prong of the credibility analysis is satisfied because the ALJ determined that Plaintiff's mental impairments could "reasonably be expected to cause some of the symptoms of which Plaintiff had complained." ECF Dkt. #13 at 27. However, the ALJ found that the second prong of the credibility analysis was not satisfied to the extent that it was inconsistent with the ALJ's RFC. *Id.* The ALJ acknowledged the terrible assault that Plaintiff suffered in August of 2008 and the injuries that she sustained, including stab wounds to her abdomen, a nasal fracture and a head injury. *Id.* The ALJ noted Plaintiff's psychiatric evaluation by Portage Path psychiatrist Dr. Schmitt, who diagnosed Plaintiff with major depression, PTSD, personality disorder, and

-11-

polysubstance dependence in early full remission and assessed her with a global assessment of functioning rating of 48 which indicated serious symptoms.  *Id.*  The ALJ reviewed the follow-up medication adjustments that Plaintiff had with a Portage Path nurse practitioner, as well as individual counseling sessions in which she participated.  *Id*.  However, no assessment as to Plaintiff's work-related limitations or disability was made or requested from Portage Path.

Without a treating physician opinion, the ALJ turned to the opinions of examining agency mental health professionals Drs. Dubey and Sipps.  ECF Dkt. #13 at 28-32.  The ALJ relied upon the opinions of Drs. Dubey and Sipps, who both found that Plaintiff would be capable of understanding, remembering and following simple instructions without difficulty.  *Id*. at 416, 475.  Plaintiff raises an issue regarding the ALJ's finding that a disconnect existed between Dr. Sipps' diagnosis of Plaintiff with BIF and the weight of the evidence, asserting that the ALJ "played doctor" in interpreting Dr. Sipps' intelligence and memory testing and making such a finding.  ECF Dkt. #16 at 10.  The ALJ did comment on a "significant disconnect between the claimant's diagnosis of BIF from Dr. Sipps and the weight of the evidence" and she noted that Dr. Dubey examined Plaintiff several months earlier and found an average level of cognitive functioning.  *Id.*  ECF Dkt. #13 at 29.  However, the ALJ stated later in her decision that she would not disturb Dr. Sipps' BIF diagnosis.  *Id*. at 30.  Further, she did not rely upon any alleged inconsistency in determining that Plaintiff could understand, remember and carry out simple instructions as she noted in her decision that Dr. Sipps had nevertheless found that even with a BIF diagnosis and a marked working memory, Plaintiff still "would appear to understand, remember, and follow simple directions without difficulty."  *Id*. at 475.  Dr. Dubey had found the same.  *Id*. at 423.  Thus, the medical evidence supports the ALJ's discounting of Plaintiff's testimony that she could not understand, remember and carry out even simple instructions.

The ALJ also relied upon nonmedical evidence to support her decision to discount Plaintiff's testimony that she could not understand, remember or carry out even simple instructions.  The ALJ cited to Plaintiff's ability to play video games, to perform household chores, and her reports to her counselor that she had attended college and was making plans to return to complete a computer programming degree and to pursue a degree in graphic design.  ECF Dkt. #13 at 78, citing ECF Dkt.

#13 at 460-461. The ALJ further cited to Plaintiff's good history of past work activity and her testimony that she was applying online for jobs as evidence of her ability to understand, remember and carry out simple instructions. *Id.* at 31.

Plaintiff complains that the ALJ failed to comment on her testimony that she stayed in bed for days or that she felt isolated while starting intensive outpatient therapy. ECF Dkt. #16 at 11. However, the ALJ did not ignore such testimony and in fact noted in her decision Plaintiff's testimony that during periods of severe depression, she became bedridden for days. ECF Dkt. #13 at 31. But the ALJ cited to evidence in the record that treating sources had found that Plaintiff's severe depression was "stable" and "controlled" when she was on her antidepressant medications, and "significant improvement" was also noted. *Id*., citing ECF Dkt. #13 at 523, 527. The ALJ also cited to notes showing an increase in Plaintiff's mood swings and depression in May of 2010 when her medication was switched to Lexapro, but she cited to medical notations from the end of June of 2010 showing that Plaintiff rated her depression a two in severity out of a ten-point scale and her statement several months later that she was "very pleased" with the results of using Lexapro and Trileptal. *Id.,* citing ECF Dkt. #13 at 459, 600, 622. The ALJ further cited to medical record notations that Plaintiff's sleep had markedly improved with an over-the-counter supplement and she denied any side effects from her medications. *Id*.

Since the ALJ applied the proper legal standards in determining Plaintiff's credibility and provided clear reasons supported by substantial evidence for discounting Plaintiff's credibility, the Court affirms the ALJ's credibility determination.

### B.     STEP FIVE DETERMINATION

Plaintiff also asserts that the ALJ lacked substantial evidence in which to find that she could perform jobs existing in significant numbers in the national economy. ECF Dkt. #16 at 13-14. For the following reasons, the Court finds no merit to Plaintiff's Step Five contentions.

The Commissioner bears the burden at Step Five to show that a significant number of jobs exist in the economy for a claimant to perform with the RFC and vocational profile determined by the ALJ. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In this case, the ALJ relied upon the VE's testimony that a hypothetical person with the RFC presented by the ALJ could perform the

-13-

jobs of housekeeping cleaner, laundry laborer, and inspector. ECF Dkt. #13 at 34. In order for a VE's testimony in response to the ALJ's hypothetical question to constitute substantial evidence to support a conclusion that a claimant can perform other work, the hypothetical question must accurately portray a claimant's impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Moreover, an ALJ is required to incorporate only those limitations that she accepts as credible into her RFC. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Plaintiff first asserts that the ALJ failed to incorporate into her RFC for Plaintiff the limitations that Plaintiff would be off task twenty percent of the work day or more and would be absent two or more days per month. ECF Dkt. #16 at 14. The Court finds that substantial evidence supports the ALJ's decision to leave the off task and absenteeism limitations out of her hypothetical. The ALJ did address these limitations at the hearing, modifying her first hypothetical to the VE to include symptoms that would render an individual to be off task more than twenty percent of the day or more, and the ALJ modified her second hypothetical to the VE to include the additional limitation that the hypothetical worker would be absent two or more days per month from the job. ECF Dkt. #13 at 102. The ALJ also acknowledged in her decision Plaintiff's report that she would be bedridden for days at a time due to her depression and inability to sleep and she would be therefore absent from work. *Id.* at 31. The ALJ also cited to a termination statement from an employer which noted attendance issues. *Id.* However, in support of her decision to not include these limitations in her RFC for Plaintiff, the ALJ cited to medical records concluding that Plaintiff's depression was stabilized and controlled on medications and Plaintiff's reports to her doctors that she was "very pleased" with her prescribed medications and had "markedly improved" sleep after taking an over-the-counter supplement. *Id.* The ALJ also cited to Plaintiff 's good work history and an August 2009 earnings statement showing that she worked a full forty-hour workweek plus eight hours of overtime, which negated reports of frequent absences. *Id.* at 32. While evidence may support a decision to the contrary, the evidence cited to the ALJ constitutes substantial evidence to support the ALJ's decision to not incorporate these limitations into her RFC for Plaintiff.

Plaintiff also complains that two of the three representative jobs identified by the VE and relied upon by the ALJ, the housekeeping cleaner and laundry laborer jobs, did not meet the ALJ's RFC because they were not simple and repetitive jobs and they required strict time requirements for completion.  ECF Dkt. #16 at 13-14.  However, the ALJ asked the VE at the beginning of his testimony to make it clear if anything that he testified to was inconsistent with or otherwise departed from information contained in the DOT and the VE indicated that he would do so.  ECF Dkt. #13 at 99-100.  The ALJ thereafter presented her first hypothetical question to the VE, asking the VE to identify jobs for a person with Plaintiff's background who is limited to simple, routine and repetitive tasks which could be learned within thirty days or less, which were also low stress, with no high production quotas, no strict time requirements, no arbitration, negotiation or confrontation, no directing of the work of others or being responsible for the safety of others.  *Id.* at 100.  The VE identified the jobs of housekeeping cleaner, laundry laborer and inspector.  *Id.* at 101.  Since the VE identified no inconsistencies or conflicts between his testimony and the DOT, the ALJ could rely on his testimony, especially since Plaintiff's counsel was given a full opportunity to cross-examine the VE in this case and indeed did so.  ECF Dkt. #11 at 102-103.  The Sixth Circuit has held that "nothing in the applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir.2008), citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374-375 (6th Cir. 2006); *see also Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir.1995) (failure to challenge basis of vocational expert's testimony at administrative hearing constitutes waiver of the issue in the district court).

Moreover, even if Plaintiff has not waived the right to raise his argument by failing to raise this issue at the hearing, and even accepting that the housekeeping cleaner and laundry laborer jobs cited by the VE require more than simple repetitive work and strict time requirements for completion, the job of inspector, which was also cited by the VE, has no difficulty meeting the ALJ's RFC.  The VE testified that there were 1,100 regional inspector jobs, 6,000 state inspector jobs and 126,000 national inspector jobs.  ECF Dkt. #13 at 106.  Plaintiff asserts that a finding of

only one job available for Plaintiff to perform does not meet the Step Five burden of the Commissioner. ECF Dkt. #18 at 4. However, the Sixth Circuit addressed this very argument in *Nejat v. Commissioner of Social Security* when it found that even if it accepted the claimant's argument that two of the three jobs identified by the VE were eliminated, the one remaining job was sufficient to constitute a significant number of jobs available in the economy and meet the Commissioner's Step Five burden. 359 Fed. App'x 574, 579 (6th Cir. 2009). The Court noted that it had addressed:

> the difficult task of enumerating exactly what constitutes a 'significant number' [of jobs]" in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988). Refusing to "set forth one special number [as] the boundary between a 'significant number' and an insignificant number of jobs," *Hall* counseled that courts address the determination on a case-by-case basis. *Id*. In this case, we conclude that the VE's testimony demonstrates significant job opportunities available to Nejat. *See, e.g., Mickelson–Wurm v. Comm'r,* 285 Fed.Appx. 482, 486–87 (9th Cir.2008) (2000 jobs a significant number); *Born v. Sec'y of Health & Human Servs.*, 923 F.2d 1168, 1174–75 (6th Cir.1990) (2500 jobs); *Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478–79 (9th Cir.1989) (1200 jobs); *Hall*, 837 F.2d at 275 (1350 jobs); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988) (500 jobs).

Similarly in this case, the Court finds that 1,100 regional, 6,000 state and 126,000 national inspector jobs constitutes a significant number of jobs, thereby meeting the Commissioner's Step Five burden. ECF Dkt. #13 at 106.

## VII. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

DATE: June 11, 2013

               */s/George J. Limbert*
               GEORGE J. LIMBERT
               UNITED STATES MAGISTRATE JUDGE